UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DANIEL HORACEK,

              Plaintiff,

v.

JOSEPH NEPH,

              Defendant.

_____/

Case No. 07-13006

Stephen J. Murphy, III
United States District Judge

Michael Hluchaniuk
United States Magistrate Judge

**REPORT AND RECOMMENDATION**
**DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (Dkt. 21)**

## I.    PROCEDURAL HISTORY

In this case, plaintiff brought a complaint, pursuant to [42 U.S.C. § 1983](#) and

state law, against defendant, an Oakland County Sheriff's Department deputy,

alleging that he falsified evidence and lied under oath and, as a result, criminal

charges were brought against plaintiff for uttering and publishing. (Dkt. 1).

Plaintiff claims that the charges were dismissed after evidence was produced that

defendant gave false testimony and other evidence. *Id*. Plaintiff seeks damages

for defendant's violation of his civil rights, given that he was held in jail between

his arrest and the dismissal of the charges. *Id*.

According to defendant, plaintiff is now in the custody of the Michigan Department of Corrections after pleading no contest to charges of receiving stolen property, fleeing from police, possession of a controlled substance, and uttering and publishing, which appear to be charges/convictions arising from the same or similar circumstances. (Dkt. 21). Defendant filed a motion for summary judgment on June 9, 2008. (Dkt. 21). In his motion for summary judgment, among other things, defendant claims that some of the evidence he claimed to have at the "swear-to" hearing[1] (the fingerprint card obtained by the bank of the person who cashed the stolen check and the bank surveillance tape) had been inadvertently destroyed by the bank, and that some of his testimony from the Walker hearing[2] was "incorrect" regarding "certain facts." According to defendant, when these issues were "cleared up" at the preliminary examination hearing, the judge dismissed the charges. (Dkt. 21).

On June 18, 2008, this Court ordered plaintiff to file a response to defendant's motion for summary judgment by July 14, 2008. (Dkt. 22). On June

---

[1] A "swear-to" hearing is when a law enforcement officer presents information to a state judge for the purpose of obtaining a complaint and an arrest warrant regarding a violation of state law.

[2] Under Michigan law, a hearing to determine the admissibility of a confession is commonly referred to as a "Walker" hearing, based on a Michigan Supreme Court case of the same name.

30, 2008, plaintiff moved for relief under Rule 56(f), claiming that, in order to respond to all the issues raised in defendant's motion for summary judgment, he needs to conduct discovery on a third-party. (Dkt. 23). Specifically, plaintiff asserts that defendant's claim that the fingerprint and surveillance tape evidence had been "inadvertently destroyed" has never been raised by defendant and that plaintiff was unaware of this claim until defendant filed the motion for summary judgment. *Id*. Thus, plaintiff sought relief under Rule 56(f) to conduct discovery on the bank regarding this issue in order to respond to the motion for summary judgment. *Id*. The discovery deadline had passed on May 9, 2008, before defendant filed his dispositive motion.

The Court ordered defendant to respond to plaintiff's motion, which defendant did on July 11, 2008. (Dkt. 24, 26). Defendant offered evidence suggesting that plaintiff's claimed basis for the Rule 56(f) motion was bogus. Specifically, defendant submitted the transcript from plaintiff's preliminary examination hearing where his counsel questioned the bank witnesses on this very issue. (Dkt. 26; Ex. 1). The undersigned issued an Order denying plaintiff's request for Rule 56(f) relief. (Dkt. 28).

On September 22, 2008, plaintiff filed his response to the motion for summary judgment. (Dkt. 34). Defendant filed a reply on September 30, 2008.

(Dkt. 32).  Plaintiff attempted to file a response to defendant's reply, which was stricken by the Court.  (Dkt. 36, 38).  Plaintiff then filed a motion to strike defendant's reply, to which defendant responded on November 26, 2008.  (Dkt. 39, 40).  This motion has been denied via separate order.  (Dkt. 41).

For the reasons set forth below, the undersigned **RECOMMENDS** that the District Court **GRANT** defendant's motion for summary judgment.

## II.     STATEMENT OF FACTS

On June 16, 2005, a breaking and entering occurred at the business of Franciscus DeRaad at 1884 Vinsetta Blvd., Royal Oak, Michigan.  A laptop computer and three check books were stolen.  (Dkt. 21, Ex. 1 (Royal Oak Police Incident Report # 05-14703)).  Plaintiff worked for Mr. DeRaad in early 2005, having left his employ in March 2005.  *Id.*  On June 17, 2005, Mr. DeRaad received a call from Citizens Bank informing him that a check had been cashed against the account at a Citizens Bank branch at Walton and Livernois in Rochester Hills, Michigan, and that someone was trying to cash another stolen check at a branch of the bank in Auburn Hills.  (Dkt. 21; Ex. 2 (Oakland County Sheriff Incident Report # 05-59396) (June 2005 incident)).  Mr. DeRaad was advised to file a police report in the jurisdiction where the check was cashed and did so.  *Id.*  That incident was assigned to defendant Detective John Neph for

investigation. As indicated in the sheriff's report, the bank had a videotape of the responsible party cashing the check at the Rochester Hills branch and also had a copy of the check with a thumb print on it. *Id*.; *see also* Dkt. 26, Ex. 2 (Neph affidavit, ¶ 1).

On July 24, 2005, plaintiff was involved in a high speed chase while attempting to flee and elude from Oakland County Sheriff's deputies. (Dkt. 21, Ex. 3 (Oakland County Sheriff Incident Report # 05-62033 and attachments) (July 2005 incident)). The pursuit ended in a crash and plaintiff was arrested. *Id*. Found in a search of plaintiff's car was a laptop computer and several checks that had been stolen during the June 16, 2005, breaking and entering, including those of account holder Franciscus DeRaad and Sonic Properties, LLC, Mr. DeRaad's business. (Dkt. 21, Ex. 3). Several checks from Mr. DeRaad's business were made out to plaintiff and others were blank, with only the first part of Mr. DeRaad's "signature" written on them. (Dkt. 21, Ex. 3, pp. 10, 13).

When Detective Neph learned about plaintiff's arrest and the relationship of the stolen property found in plaintiff's vehicle to the June 2005 incident, he conducted a follow-up investigation by interviewing the Citizen's bank teller and bank manager where the check had been presented for cashing. (Dkt. 21, Ex. 2, p. 7). At that time, both the teller and manager stated that they would be able to

identify the person who had cashed a check on June 17, 2005. *Id*; *see also* Dkt. 26, Ex. 2, ¶ 1. Detective Neph also interviewed plaintiff in the Oakland County Jail. *Id*. According to Detective Neph, plaintiff signed a Miranda warnings waiver form and plaintiff agreed to talk to him. (Dkt. 21, Ex. 2; Dkt. 34, Ex. D). According to Detective Neph, plaintiff admitted that his accomplices, Marcus Johnson and Marcus' brother, had stolen the computer and check books and that they were making him cash the checks for payoff from drugs he had obtained from them. (Dkt. 21, Ex. 2). According to defendant, the plan was for plaintiff to pawn the laptop computer, but he was caught by the Sheriff's Department before he could do so. *Id*. Defendant claims that plaintiff admitted that he had formerly worked for the company, but denied being the one who broke into the business; rather, he claimed that his accomplices Rick and Marcus had done so and that he, plaintiff, was simply to cash the stolen checks to pay them off for drugs. *Id*. As a result of the investigation plaintiff was charged with uttering and publishing. (Dkt. 21, Ex. 4 (Warrant and Complaint)).

On July 15, 2005, District Judge Lisa L. Asadoorian conducted a "Swear-to and Arraignment" hearing on the arrest warrant and complaint. (Dkt. 34, Ex. B; Dkt. 32, Ex. 1). This procedure was apparently undertaken because plaintiff was already in custody on other charges. Detective Neph testified that he initially had

no suspects for the Citizen's check fraud complaint, but then learned of the checks from Mr. DeRaad's office found in plaintiff's car. (Dkt. 32, Ex. 1, pp. 3-4). Detective Neph testified that he Mirandized plaintiff, who waived his rights, and proceeded to interview plaintiff, without counsel present. (Dkt. 32, Ex. 1, p. 4). According to Detective Neph's testimony, plaintiff told him that he was familiar with the check cashed at Citizen's Bank, that he was in possession of the checks, and that he was cashing them to pay off his drug dealer. *Id*. Detective Neph then testified as follows:

> I then also interviewed Alison Gabler (phonetic) who was the manager of Citizen's Bank who dealt with the checks and the person who came in. She identified Mr. Horacek as the one who came in and cashed the check that they took. Also, I have video of the check transaction which I then saw it was Mr. Horacek at that time. So I did ask for the warrant for U and P.

(Dkt. 32, Ex. 1, p. 4). Based on this testimony, the judge found sufficient evidence for the warrant, signed the complaint, and proceeded with plaintiff's arraignment on the charge. (Dkt. 32, Ex. 1, pp. 4-5). The false instrument supporting the charge against plaintiff was described by the judge as "a check dated June 15, 2005 in the amount of $475 drawn on Citizen's Bank made payable to: Gary Lee Roberts. The maker was purportedly Franciscus Deraad." (Dkt. 32, Ex. 1, p. 5).

This description is consistent with that on the warrant and the complaint. (Dkt. 21, Ex. 4).

On October 13, 2005, Judge Asadoorian conducted a "Walker" hearing, which relates to the admissibility of plaintiff's confession. (Dkt. 34, Ex. E). Unfortunately, the record does not contain the entire transcript from this hearing, but plaintiff provided the following excerpted testimony by Detective Neph:

> Q.     And you've heard testimony today about there being question about when you did the swear-to, do you recall if you testified that Mr. Horacek's name was on the check in question in this case? Do you recall testifying to that at the swear-to?
>
> A.     Yes I did.
>
> * * *
>
> Q.     And that check is not written out to Mr. Horacek, correct?
>
> A.     That's correct.
>
> Q.     Which would be in contrast to what information was indicated to the court at the time of the swear-to?
>
> A.     That is correct.
>
> Q.     Okay and at the time of the swear-to, do you recall also indicating that that check was signed off by Mr. Horacek, meaning endorsed? In order for it, it came to you that it was endorsed by Mr. Horacek, do you recall stating that at the swear-to?
>
> A.     Yes I do.

(Dkt. 34, Ex. E, pp. 15-16). It is clear that the transcript of the "swear-to" hearing, the entirety of which is contained in the record in this case, contains no testimony from Detective Neph suggesting that plaintiff's name or any signature of his own name was anywhere on the forged check. (Dkt. 32, Ex. 1). Because the parties did not provide the entire Walker hearing transcript, the Court is left without a clear picture of Judge Asadoorian's rulings and without plaintiff's testimony at that hearing. However, it is assumed for purposes of this motion that the result of the hearing was that plaintiff's confession was deemed admissible because evidence of the confession was admitted at the subsequent preliminary examination.

The next piece of this testimonial puzzle is plaintiff's preliminary examination, which occurred on November 3, 2005. The record did not initially contain a complete copy of this hearing transcript; rather, the parties had provided the Court with bits and pieces at various times. (Dkt. 34, Ex. A (pp. 1, 25, 35-37, 41, 45); Dkt. 32, Ex. 2 (pp. 1-2, 14); (Dkt. 26, Ex. 1 (pp. 1-2, 4-14, 40-41)). On, March 12, 2009, the Court ordered defendant to file complete copies of the preliminary examination hearing transcript and the Walker hearing transcript.[3]

---

[3] Defendant filed a partial transcript of the Walker hearing on March 12, 2009. (Dkt. 44). The partial transcript does not include plaintiff's testimony at the

Report and Recommendation
Defendant's Motion for Summary Judgment
*Horacek v. Neph*; 07-13006

(Dkt. 42). Defendant filed the preliminary examination hearing transcript on March 12, 2009. (Dkt. 43). The transcript reflects that, sometime between the issuance of the warrant and the preliminary examination on November 3, 2005, the check and thumb print were mistakenly destroyed by the bank and the video tape was mistakenly erased by the bank. *Id.* Additionally, both the bank teller and manager failed to identify plaintiff in a line-up. *Id.* Finally, during the preliminary examination on November 3, 2005, Detective Neph again testified that his testimony at the "swear-to" hearing was incorrect:

> Q. How did your investigation lead to Daniel Horacek?
>
> A. One of our other officers was investigating a bad check case from Standard Federal that ended up in a fleeing and eluding which ended up into a car crash. And upon that car crash, there was some checks that were endorsed and in connection with the one that I had from Citizen's Bank that was from a theft out of Royal Oak.
>
> Q. You said they were endorsed?
>
> A. Or they were -- they were filled out and signed under different names, yes, but they were all from the same company -- from the same check that I had that was passed at Citizen's Bank.

---

hearing or Judge Asadoorian's ruling. The Court understands that, for whatever reason, neither plaintiff's testimony nor the judge's ruling have yet been transcribed.

Q.      Same account holder?

A.      Yes.

* * *

Q.      Okay and Detective Neph, obviously at the Walker hearing we talked about the fact that when you swore to the warrant in this Court in order to obtain the warrant in regards to the charges that we're here about today, you were asked to make a factual basis by this Judge with regards to obtaining that warrant, is that correct?

A.      That is correct.

Q.      And on that date you indicated that this check was written out to Daniel Horacek, correct?

A.      That's correct.

Q.      And you also indicated that it was signed, rather endorsed on the back by Daniel Horacek?

A.      That's correct.

Q.      And that is not correct?

A.      That's right.

Q.      Is that true? Okay and also, we've established today by the testimony of the bank teller that there was also a license -- a driver's license number obtained in regards to a Gary Roberts which is the name on this check, correct?

A.      Correct.

(Dkt. 34, Ex. A, pp. 25, 35-36).

Based on the failure of the bank witnesses to identify plaintiff in the line-up, the lack of videotape and fingerprint evidence, and the swear-to testimony that was "admittedly not accurate," the state court judge ruled that the prosecutor's office did not sustain its burden of proof and dismissed the charge. (Dkt. 34, Ex. A, p. 45). However, Judge Asadoorian did not discuss plaintiff's "confession" in her decision rendered at the preliminary examination hearing. (Dkt. 43, pp. 43-46). A comparison of the police reports that have been submitted as part of this motion with the transcript of the preliminary examination indicates that not all of the information available to defendant at the time the complaint was issued was offered as evidence at the preliminary examination.

## III. PARTIES' ARGUMENTS

### A. Defendant's Motion for Summary Judgment

Defendant argues that plaintiff's claims are barred because there was probable cause supporting the arrest warrant. (Dkt. 21). Specifically, defendant points to the following as supporting probable cause: A breaking and entering and theft of a laptop computer and several check books from a business that plaintiff previously worked for; the finding of the computer and checks from the business in plaintiff's car; a suspect who was under arrest for fleeing and eluding and uttering and publishing after attempting to cash a stolen forged check; a video

tape showing the person who attempted to cash the check from the DeRaad

account and a copy of the check with a thumb print; eyewitness identification from

a bank teller and manager that plaintiff was the one who attempted to cash the

check; plaintiff's own interview in the jail after waiving Miranda rights

and agreeing to talk to the detective and admitting that he was involved in the

scheme to cash stolen checks to pay for drugs.  (Dkt. 21, p. 11).  Defendant argues

that probable cause is not negated because the videotape and thumb print were

mistakenly destroyed and the two eyewitnesses failed to identify plaintiff in a line-

up.  Defendant also argues that the "slight inconsistencies or minor factual

discrepancies" in his testimony, which was a factor used by the state court judge to

dismiss the charges, also does not negate probable cause for the arrest warrant.

Defendant also argues that the decision to continue with the prosecution of

plaintiff through the arraignment stage in spite of the lost/destroyed evidence and

the failure to identify by the eyewitnesses, was solely the decision of the

prosecutor.  Defendant asserts whether to proceed was not his decision, although

his motion for summary judgment does not offer any evidence to support this

claim.

Defendant also argues that he is protected by qualified immunity.  Because

there was probable cause to seek the warrant, arrest plaintiff and proceed with a

criminal case, defendant had no reason to believe that he was violating plaintiff's civil rights or was otherwise violating any known law. According to defendant, his actions were reasonable in light of the facts and circumstances available to him in evaluating the case. Further, defendant asserts that he had no reason to believe that what he was doing violated any of plaintiff's rights. Therefore, defendant argues that he is entitled to qualified immunity.

B.    Plaintiff's Response

Plaintiff argues that defendant is not entitled to qualified immunity because, under the Michigan governmental immunity statute, "gross negligence" is excluded from its scope. (Dkt. 34, p. 11). Plaintiff further argues that qualified immunity does not give protection to the plainly incompetent or those who knowingly violate the law. *Id.* According to plaintiff, the "question is whether a reasonably well-trained officer in defendant's position would have known that his affidavit failed to establish probable cause and that he should not have applied for the warrant." (Dkt. 34, p. 11).

Plaintiff argues that defendant lied to the court at the "swear-to" hearing by falsely testifying that:

> 1) he had a check made out to the Plaintiff, Daniel Horacek, when in fact the check was made out to a "Gary Lee Roberts";

2) he had a check that was endorsed by Plaintiff, Daniel
Horacek, when in fact the check was endorsed by a
"Gary Lee Roberts";

3) that he had a witness, being Allison Gabler, that had
identified the Plaintiff, Daniel Horacek, as being the
perpetrator of the offense, when in fact Allison Gabler
never made any such identification or claims;

4) he had a video tape and that, after viewing the alleged
video tape, he "then saw it was Mr. Horacek at that
time," yet now, in Defendant's Response to this
Complaint, the Defendant claims to have no knowledge
of this video tape and its contents; and

5) that he had obtained a confession to the offense from
the Plaintiff after the Plaintiff waived his Miranda
Rights, yet this confession and Miranda Waiver never
occurred as clearly shown by the physical evidence
submitted in this matter, being the clearly altered and
undated Miranda Rights Waiver form and Plaintiff's
Affidavit whereby it is clearly set forth that no such
interview took place and no such confession was given.

Plaintiff argues that the judge's finding of sufficient evidence to support the arrest

warrant at the "swear-to" hearing was based on defendant's "lies." (Dkt. 34, pp.

15-16).

Plaintiff also argues that the Court should reject defendant's reliance on

"other evidence" to support his probable cause argument because defendant's

allegations are false. Specifically, plaintiff argues that defendant's claim that the

checks found in his car were "from the same company" and "from the same check

that ... was passed at Citizen's Bank" is untrue. (Dkt. 34, p. 20; Ex. A, p. 25). According to plaintiff, the "other checks" are National City Bank not Citizens Bank and they are business checks from "Sonic Properties" and not from the personal checking account of Franciscus DeRaad, as the check from Citizen's Bank had been. *Id.* Plaintiff also argues that defendant's reliance on police reports with "incident numbers" different from the Citizen's Bank incident report are "inadmissible" and that defendant just seeks to "poison the well" before the Court. (Dkt. 34, p. 20).

In his response, plaintiff also asserts that he has set forth sufficient facts, for purposes of summary judgment, to establish his claims for (1) false arrest and false imprisonment; (2) intentional infliction of emotional distress; (3) malicious prosecution; (4) abuse of process; (5) violation of his Fourteenth Amendment Due Process rights; and (6) First Amendment retaliation. (Dkt. 34, pp. 23-28).

C.    Defendant's Reply

In reply, defendant asserts that plaintiff attempts to mislead the Court with several misstatements of fact. Contrary to plaintiff's claim, defendant Neph never testified at the "swear-to" hearing that he possessed a check made out to Daniel Horacek or that the check was endorsed by Daniel Horacek. (Dkt. 32, pp. 1-2; Ex. 1). Defendant asserts that, contrary to plaintiff's claims, the state court was fully

informed that the forged check was made payable to "Gary Lee Roberts" and there is no testimony about the check being "endorsed" by anyone. (Dkt. 32, p. 2; Ex. 1). Defendant Neph also points out that, according to the testimony of the bank employee who testified at the preliminary examination, the video tape and thumb print were mistakenly destroyed by the bank *before* the preliminary examination, not afterward, as plaintiff claims. (Dkt. 32, p. 2; Ex. 2).

Defendant again argues that his testimony at the "swear-to" was a misstatement, that he never personally saw the video tape and that it was the two bank employees who told defendant that the video tape could identify plaintiff. (Dkt. 32, p. 2). Defendant asserts that plaintiff is misleading the Court by arguing that the check cashed at Citizen's Bank (which was from Mr. DeRaad's personal account) was not a "Sonic Properties" check as noted in the evidence list produced by defendant. Defendant points out that checks belonging to Sonic Properties and Mr. DeRaad were in plaintiff's possession after the car crash. (Dkt. 32, p. 3). Defendant distinguishes the case of *Yancey v. Carroll Co. Ky.*, 876 F.2d 1238 (6th Cir. 1989), on which plaintiff relies because, here, defendant "did not knowingly or with reckless disregard make false statements or omissions to the judge." (Dkt. 32, p. 3). Rather, the statements were true at the time they were made (with the exception of the statement that he had viewed the video tape) and the destruction

of evidence and misidentification by witnesses came after the warrant was issued. *Id*.

Defendant also urges the Court to reject plaintiff's claim for First Amendment retaliation based on a prior lawsuit against other officers of the Oakland County Sheriff's Office because defendant Neph was not a party to that earlier case and, since plaintiff lost that earlier case, there would be no reason for defendant to retaliate against plaintiff. Further, plaintiff's earlier case against other deputies was tried in January 2003, over two years before his arrest at issue here. (Dkt. 32, p. 4).

## IV. DISCUSSION

### A. Standard of Review

Summary judgment is appropriate under Rule 56(b) "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). In *Copeland v. Machulis*, 57 F.3d 476, 478-79 (6th Cir. 1995), the court stated the standard for deciding a motion for summary judgment:

> The moving party bears the initial burden of establishing an absence of evidence to support the nonmoving party's case. Once the moving party has met its burden of

> production, the non-moving party cannot rest on its
> pleadings, but must present significant probative
> evidence in support of the complaint to defeat the motion
> for summary judgment. The mere existence of a scintilla
> of evidence to support plaintiff's position will be
> insufficient; there must be evidence on which the jury
> could reasonably find for the plaintiff.

A genuine issue of material fact exists only when, assuming the truth of the non-moving party's evidence and construing all inferences from that evidence in the light most favorable to the non-moving party, there is sufficient evidence for a trier of fact to find for the non-moving party. *Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

"In deciding a motion for summary judgment, [the] court views the factual evidence and draws all reasonable inferences in favor of the nonmoving party." *McLean v. 988011 Ontario, Ltd.*, 224 F.3d 797, 800 (6th Cir. 2000). This is not to say that some credibility determinations are beyond what is appropriate in deciding a motion for summary judgment. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 127 S.Ct. 1774, 1776 (2007).

Rule 56 limits the materials the Court may consider in deciding a motion

under the rule: "pleadings, depositions, answers to interrogatories, and admissions

on file, together with the affidavits." *Copeland v. Machulis*, 57 F.3d 476, 478 (6th

Cir. 1995) (citation omitted). Moreover, affidavits must meet certain

requirements:

> A supporting or opposing affidavit must be made on
> personal knowledge, set out facts that would be
> admissible in evidence, and show that the affiant is
> competent to testify on the matters stated. If a paper or
> part of a paper is referred to in an affidavit, a sworn or
> certified copy must be attached to or served with the
> affidavit. The court may permit an affidavit to be
> supplemented or opposed by depositions, answers to
> interrogatories, or additional affidavits.

Fed.R.Civ.P. 56(e)(1). In accordance with Rule 56(e), the Sixth Circuit has held

"that documents submitted in support of a motion for summary judgment must

satisfy the requirements of Rule 56(e); otherwise, they must be disregarded."

*Moore v. Holbrook,* 2 F.3d 697, 699 (6th Cir. 1993). Thus, in resolving a Rule 56

motion, the Court should not consider unsworn or uncertified documents, *Id.*,

unsworn statements, *Dole v. Elliott Travel & Tours, Inc.*, 942 F.2d 962, 968-969

(6th Cir. 1991), inadmissible expert testimony, *North American Specialty Ins. Co.*

*v. Myers*, 111 F.3d 1273, 1280 (6th Cir. 1997), or hearsay evidence, *Hartsel v.*

*Keys*, 87 F.3d 795, 799 (6th Cir. 1996); *Wiley v. United States*, 20 F.3d 222,

225-226 (6th Cir. 1994). *See Tolliver v. Federal Republic of Nigeria*, 265 F.Supp.2d 873, 879 (W.D. Mich. 2003). Thus, "[a] party opposing a motion for summary judgment cannot use hearsay or other inadmissible evidence to create a genuine issue of material fact." *Id.*, quoting, *Sperle v. Michigan Dept. of Corrections*, 297 F.3d 483, 495 (6th Cir. 2002) (citation and quotation marks omitted).

B.    False Arrest, False Imprisonment, and Malicious Prosecution

It is unclear from plaintiff's complaint or his response to the motion for summary judgment whether he relies on 42 U.S.C. § 1983 for his false arrest, false imprisonment, and malicious prosecution claims, whether they are solely based on state law, or both. Section 1983 claims based on theories of false arrest/false imprisonment[4] and malicious prosecution stand on the Fourth Amendment and

_____

[4] In *Wallace v. Kato*, 549 U.S. 384, 127 S.Ct. 1091, 1095 (2007), the Supreme Court noted the "overlap" between false imprisonment and false arrest claims and, after collectively referring to these claims as "false imprisonment," the Court explained how a false imprisonment claim differs from a malicious prosecution claim. The Court explained that, "[r]eflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges." *Wallace v. Kato*, 127 S.Ct. at 1096. After such legal process begins, "unlawful detention forms part of the damages for the 'entirely distinct' tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process." *Id.*

turn on the question of probable cause. *Frantz v. Village of Bradford*, 245 F.3d 869, 873 (6th Cir. 2001). *See also* *Gregory v. City of Louisville*, 444 F.3d 725, 748-49 (6th Cir. 2006) (cause of action for "malicious prosecution" under § 1983 is actually a Fourth Amendment claim to be free from pretrial detention without probable cause); *Stemler v. City of Florence*, 126 F.3d 856, 871-72 (6th Cir. 1997) (finding the existence of probable cause for arrest forecloses false arrest claims); *Baker v. McCollan*, 443 U.S. 137, 142-43 (1979) ("[b]y virtue of its 'incorporation' into the Fourteenth Amendment, the Fourth Amendment requires the States to provide a fair and reliable determination of probable cause as a condition for any significant pretrial restraint of liberty.").

The same is true under Michigan law. Thus, plaintiff's state law claims for false arrest/false imprisonment and malicious prosecution also turn on the question of probable cause. *Blase v. Appicelli*, 489 N.W.2d 129, 131 (Mich.App. 1992) ("[t]o prevail on a claim of false arrest, the plaintiff must show that the arrest was not legal, i.e., that it was made without probable cause"); *id.* ("[o]ne element that the plaintiff must prove to succeed on an action for malicious prosecution is the absence of probable cause for the proceedings"); *Peterson Novelties, Inc. v. Berkley*, 259 Mich.App 1, 18 (2003) (To sustain a claim of false imprisonment, the confinement must "have occurred without probable cause to support it.").

Thus, the Court must examine whether the uncontroverted evidence establishes a lack of probable cause. Probable cause denotes "facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *Michigan v. DeFillippo*, 443 U.S. 31, 37 (1979); *Crockett v. Cumberland Coll.*, 316 F.3d 571, 580 (6th Cir. 2003). Whether probable cause exists is determined under a reasonableness standard based on all the facts and circumstances within the officer's knowledge at the time of the arrest or seizure. *Thacker v. City of Columbus*, 3128 F.3d 244, 255 (6th Cir. 2003). An arrest pursuant to a facially valid warrant is normally a complete defense to a federal constitutional claim for false arrest and false imprisonment made under § 1983. *Voyticky*, 412 F.3d at 677, citing, *Baker v. McCollan*, 443 U.S. at 143-144. And, the law is settled that "where there is probable cause to prosecute, a § 1983 action for malicious prosecution will not lie." *Jolley v. Harvell*, 2007 WL 3390935, *6 (6th Cir. 2007), quoting, *McKinley v. City of Mansfield*, 404 F.3d 418, 444-45 (6th Cir. 2005). The focus is of this inquiry is on the information of which defendant was aware when he sought the warrant and complaint and whether **that**

information established probable cause, rather than the decision that was subsequently made by the state judge at the time of the preliminary examination.

The undersigned suggests that probable cause existed to support the arrest warrant as found by the state court judge at the time of the swear-to proceeding. Specifically, there was a breaking and entering and theft of a laptop computer and several check books at the business where plaintiff used to work; the laptop computer and checks from both the Mr. DeRaad's business and Mr. DeRaad's personal account were found in plaintiff's car approximately 40 days after the breaking and entering; plaintiff was arrested for fleeing and eluding and uttering and publishing after attempting to cash a stolen forged check on another account; the bank witnesses told Detective Neph that they had a video tape showing the person who attempted to cash the check from the DeRaad account and a copy of the check with a thumb print; bank employees told Detective Neph that they could identify the person who cashed the check; and Detective Neph's contemporaneous account of plaintiff's interview in the jail during which plaintiff admitted to being associated with individuals who committed the breaking and entering at Mr. DeRaad's business as well as admitting to cashing checks stolen in the breaking and entering for the purpose of paying off a drug debt and acknowledging an

intent to sell the stolen laptop computer.  The undersigned suggests that sufficient

probable cause existed to support the arrest warrant.

Plaintiff argues, however, the Detective Neph provided knowingly false

testimony at the "swear-to" hearing, which could negate a probable cause finding.

*Peet v. City of Detroit*, 502 F.3d 557, 566 (6th Cir. 2007) (Malicious prosecution

claim under § 1983, based on a police officer's supplying false information to

establish probable cause, fails where there is no evidence that the officer supplied

the magistrate judge with false information to establish probable cause.).  The

Sixth Circuit in *Adams v. Metiva*, 31 F.3d 375, 388 (6th Cir. 1994) held that a

malicious prosecution claim under Michigan law could be sustained when a

defendant police officer "intentionally lied in his incident report in order to

procure a criminal proceeding against [the plaintiff] which defendant knew was

not supported by probable cause."  *See also Belt v. Ritter*, 18 Mich.App. 495, 503;

171 N.W.2d 581 (1969) (stating that "the only situation an action for malicious

prosecution would properly lie is where a police officer knowingly swears to false

facts in a complaint, without which there is no probable cause").  On the other

hand, alleging that a police officer failed "to include all exculpatory facts is not

adequate to sustain a suit for malicious prosecution."  *Payton v. City of Detroit,*

211 Mich.App. 375, 395; 536 N.W.2d 233 (1995).

In this case, plaintiff claims that defendant testified falsely in the following

ways:

> 1) he had a check made out to the Plaintiff, Daniel
> Horacek, when in fact the check was made out to a "Gary
> Lee Roberts";
>
> 2) he had a check that was endorsed by Plaintiff, Daniel
> Horacek, when in fact the check was endorsed by a
> "Gary Lee Roberts";
>
> 3) that he had a witness, being Allison Gabler, that had
> identified the Plaintiff, Daniel Horacek, as being the
> perpetrator of the offense, when in fact Allison Gabler
> never made any such identification or claims;
>
> 4) he had a video tape and that, after viewing the alleged
> video tape, he "then saw it was Mr. Horacek at that
> time," yet now, in Defendant's Response to this
> Complaint, the Defendant claims to have no knowledge
> of this video tape and its contents; and
>
> 5) that he had obtained a confession to the offense from
> the Plaintiff after the Plaintiff waived his Miranda
> Rights, **yet this confession and Miranda Waiver never
> occurred** as clearly shown by the physical evidence
> submitted in this matter, being the clearly altered and
> undated Miranda Rights Waiver form and **Plaintiff's
> Affidavit whereby it is clearly set forth that no such
> interview took place and no such confession was
> given**.

(Dkt. 21, pp. 14-15, emphasis added).

With respect to the first two allegations, there is no testimony from the swear-to hearing suggesting that the check at issue was made out to plaintiff or endorsed in plaintiff's real name. Detective Neph's testimony is consistent with the judge's statement at the swear-to hearing, the warrant itself, and the complaint. Thus, plaintiff first two allegations of "false evidence" have no factual foundation.

With respect to the pre-hearing "identification" by the bank witnesses, Detective Neph's contemporaneously prepared police report indicates that Ms. Gabler had identified one of the men at the bank and said that the bank had a videotape of the incident. After interviewing Ms. Jones, Detective Neph wrote in his June 30, 2005 report, that she "described Horacek to me and also stated she could identify him if she saw him again." (Dkt. 21, Ex. 2). Detective Neph's report, which was written after he interviewed plaintiff and Ms. Jones, suggests that Ms. Jones' description of the person who cashed the check was consistent with Mr. Horacek's appearance, as there is no suggestion in the record that any formal identification occurred at this time. *Id*. At the swear-to hearing, Detective Neph testified that, after interviewing Ms. Gabler, "she identified Mr. Horacek as the one who came in and cashed the check that they took." (Dkt. 32, Ex. 1, p. 4). It appears that Detective Neph confused the statements of the two witnesses, however, one of the bank witnesses "described Horacek" to Detective Neph and

thus, his testimony, while inaccurate, was not knowingly false or inconsistent with the evidence supported probable cause. *See Flowers v. City of Detroit*, 2009 WL 113786 (6th Cir. 2009) ("An imperfect witness is not the same thing as a 'false' witness.").

More troubling is Detective Neph's testimony at the swear-to hearing that "I have a video of the check transaction which I then saw it was Mr. Horacek at that time." (Dkt. 32, Ex. 1, p. 4). Detective Neph has admitted that this testimony is not accurate and that he never had possession of or viewed the videotape. He claims, however, that his testimony was merely a misstatement was not intended to be false or misleading. The undersigned suggests that probable cause could have existed regardless of the existence of the videotape. Further, since Detective Neph did not have possession of the videotape and had not seen it, there is no possibility that he failed to inform the judge about potentially exculpatory evidence.

Finally, plaintiff claims that his "confession" was made from whole cloth, that he never talked to Detective Neph, and that the Miranda waiver was forged. While the record does not contain the entire Walker hearing transcript, including plaintiff's testimony and the judge's ruling, the preliminary examination transcript reveals that plaintiff's confession, as testified to by Detective Neph, was admitted. (Dkt. 41, pp. 26-28). Thus, while the record does not contain the state court

judge's definitive ruling from the Walker hearing, it can be deduced that Mr.

Horacek's motion to exclude his confession was denied. Moreover, at the

preliminary examination, plaintiff's lawyer did not argue, as plaintiff does in this

case, that his confession never occurred and that he never spoke with Detective

Neph. Rather, plaintiff's lawyer argued, contrary to plaintiff's position in this

case, that the "confession" related solely to another uttering and publishing

charged lodged against plaintiff, and not the Citizen's Bank check matter. (Dkt.

43, pp. 31-35); *see also* p. 39 ("Yet it is your testimony [Detective Neph] to this

Judge that it's impossible that this defendant [plaintiff Horacek] was confused

when you were questioning him at the jail, while he was taking narcotics in terms

of the questions that he answered regarding this check [Citizen's Bank check]

when there were several checks that were in question at that time?"); p. 41

("Detective Neph also has indicated that when he spoke to Mr. Horacek..."); p. 42

("he [Detective Neph] did not to specifically tell Mr. Horacek what checks they

were talking about and it's obviously very possible Mr. Horacek was talking about

checks in another matter..."). It is clear from that record that plaintiff's counsel, at

the preliminary examination, conceded that a confession had taken place but that

plaintiff may have been confused or under the influence of medication and,

therefore, his admissions may have related to other crimes, rather than the crime that was then charged against plaintiff.

Based on the foregoing, the undersigned suggests that plaintiff has failed to come forth with any evidence, as is his burden, to show that these allegations negate the probable cause for the arrest warrant and defendant's motion for summary judgment on plaintiff's claims of false arrest/false imprisonment and malicious prosecution should be granted. *Buttino v. City of Hamtramck*, 87 Fed.Appx. 499 (6th Cir. 2004) (The plaintiff failed to submit any evidence supporting his claim that the police officer misrepresented statements by a witness to the magistrate judge and that the magistrate judge signed a warrant based on information that had been recanted.); *Peet v. City of Detroit*, 502 F.3d 557 (6th Cir. 2007) (Because the plaintiff did not show that the state judge relied on false information to determine that probable cause existed to bind the plaintiff over for trial, the plaintiff was precluded from relitigating the matter on a theory of malicious prosecution under § 1983); *Molnar v. Care House*, 574 F.Supp.2d 772, 790 (E.D. Mich. 2008) ("[E]ven though a plaintiff might be allowed to bring a claim relying on a police officer's bad faith, misrepresentation of facts, or supplying false information, he still must provide evidence to support his claim or it will be dismissed.").

C.    Abuse of Process

Like a claim for malicious prosecution brought under § 1983, it is not clear that there is a federally recognized § 1983 cause of action for abuse of process. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676-77 (2005); *Sutherland v. Mizer*, 2008 WL 1995089 (E.D. Mich. 2008). Any cause of action arising under § 1983 should be defined by federal law rather than any particular state definition of a comparable tort action. *Darrah*, 255 F.3d at 311-12; *see also Heck*, 512 U.S. at 483-84 (the common law of torts, rather than the tort law of a particular state, was the "starting point" for considering the "elements of damages and the prerequisites for their recovery" in a claim under § 1983).

The Sixth Circuit has never held that a claim for abuse of process is cognizable under §1983, but to the extent that such a claim is cognizable, its elements would mirror state law. *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 676-677 (6th Cir. 2005).[5] In *Voyticky*, Sixth Circuit examined the elements of the tort of abuse of process under Ohio law, which are: (1) that a legal

_____

[5] Further, to the extent that *Voyticky* leaves open the question of whether an abuse of process claim is cognizable under 1983, it cannot be persuasively argued that defendants knew or should have known that plaintiff had a clearly established constitutional right to be free from abuse of process and defendants were entitled to qualified immunity. *Sutherland v. Mizer*, 2008 WL 1995089, *9 (E.D. Mich. 2008)

proceeding has been set in motion in proper form and **with probable cause**; (2)

that the proceeding has been perverted to attempt to accomplish an ulterior

purpose for which it was not designed; and (3) that direct damage has resulted

from the wrongful use of process.

Michigan common law does not precisely mirror Ohio common law, and

thus, does not mirror the elements analyzed in *Voyticky*. A Michigan common

abuse of process claim requires a plaintiff to prove the following elements: "(1)

an ulterior purpose, and (2) an act in the use of process that is improper in the

regular prosecution of the proceeding." *Bonner v. Chicago Title Ins. Co.*, 194

Mich.App. 462, 472; 487 N.W.2d 807 (1992); *see also Friedman v. Dozorc*, 412

Mich. 1, 30 (1981); *Voyticky*, 412 F.3d at 676-77; Restatement Torts 2d, § 682

(abuse of process defined as the use of a legal process against another person

"primarily to accomplish a purpose for which it is not designed."). Michigan law

is not entirely clear on whether a plaintiff must allege, as under Ohio law, that

probable cause was present in order to establish an abuse of process claim. *See*

*e.g.*, *Card v. City of Highland Park*, 2003 WL 21350239, *3 (Mich.App. 2003)

(while lack of probable cause is not an element of the claim, the Court of Appeals

found that "because the arresting officers had probable cause to arrest plaintiff, his

[claim] for ... abuse of process [is] without merit"). However, Michigan law is

clear that an abuse of process claim requires proof of an act which itself

corroborates the ulterior purpose. *Mullen v. Wayne Co.*, 2005 WL 1750800, *5

(Mich.App. 2005).

The undersigned suggests that plaintiff's abuse of process claim, whether

analyzed under *Voyticky* or Michigan common law, must fail because plaintiff fails

to articulate an "ulterior motive" or any evidence to support such motive.

Plaintiff, in support of his abuse of process claim, assets the following:

> In the instant matter, the evidence shows that the
> Defendant filed a false police report when he fabricated a
> confession statement in said report, as well as providing
> the Court with numerous false statements made under
> oath (i.e. that the check in question had the Plaintiff's
> name on it, was endorsed by the Plaintiff, that he had a
> witness that positively identified the Plaintiff, etc.). This
> conduct on the part of the Defendant clearly had an
> ulterior purpose, that being to prosecute the Plaintiff and
> jail him where there was no legitimate probable cause to
> arrest the Plaintiff.

(Dkt. 34, p. 26). Plaintiff's allegation of an "ulterior motive" mirrors his position

in support of his false arrest and malicious prosecution claims. It is clear,

however, that an abuse of process claim rests on different grounds than a

malicious prosecution claim and that the "ulterior motive" must be something

other than seeking to arrest or prosecute a person without probable cause.

Essentially, where the alleged "ulterior motive" is to use the legal process to

obtain an arrest and conviction, as plaintiff here claims, an abuse of process claim

will not lie.  *See e.g.*, *Bennington v. Dollar Tree Stores, Inc.*, 28 Fed.Appx. 482

(6th Cir. 2002) (The plaintiff could not prove the tort of abuse of process against

store owners because she could not establish that the allegations against her were

born of an ulterior motive, and even if store owners had bad intentions, they only

used the legal process to effect the intended purpose of prosecuting suspected

shoplifters.); *National Fair Housing Alliance v. Town and Country-Sterling*

*Heights, National Fair Housing Alliance v. Town and Country-Sterling Heights,*

*Inc.*, 2008 WL 4826299 (E.D. Mich. 2008) ("The ulterior purpose should be

collateral to the lawsuit, and not a direct goal of the action.").  Thus, the

undersigned suggests that defendant's motion for summary judgment on plaintiff's

abuse of process claim, whether it is grounded in state or federal law, be granted.

    D.    <u>Fourteenth Amendment Due Process</u>

In his response to the motion for summary judgment, plaintiff raises a

Fourteenth Amendment due process claim.  The "Fourteenth Amendment protects

only against abuse of executive power which shocks the conscience." *Sperle v.*

*Michigan Department Corrections*, 297 F.3d 483, 491 (6th Cir. 2002) (citations

and internal quotation marks omitted).  Simple negligence does not rise to the

level of a substantive due process violation.  *Id.*  To establish a substantive due

process claim, plaintiff must show that defendants "possessed a purpose to cause harm, such that their actions were sufficiently arbitrary and reckless that they shock the conscience." *Draw v. City of Lincoln Park*, 491 F.3d 550, 555 (6th Cir. 2007), citing, *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998). Even otherwise impermissible "conduct must truly be extraordinary in nature to qualify as 'conscience shocking.'" *Draw*, 491 F.3d at 550. As the Supreme Court held, "the due process guarantee does not entail a body of constitutional law imposing liability whenever someone cloaked with state authority causes harm." *Id.*, quoting, *Lewis*, 523 U.S. at 848. Offering perjured testimony can sustain a due process claim. *See e.g. Chancellor v. City of Detroit*, 454 F.Supp.2d 645, 659 (E.D. Mich. 2006) (Noting that the Supreme Court held in *Pyle v. Kansas*, 317 U.S. 213, 216 (1942), that "'perjured testimony knowingly used by the state authorities to sustain [defendant's] conviction' and 'deliberate suppression by these same authorities of evidence favorable to him' violates the Constitution."); *Robinson v. Unknown Schertz*, 2007 WL 4454293, *1 (W.D. Mich. 2007) (The plaintiff stated a substantive due process claim by alleging that the defendant attempted to frame him by filing a false misconduct report where the plaintiff also alleged that the false charges subjected him to the possibility of loss of liberty through segregation and loss of good-time credits); *Scott v. Churchill*, 377 F.3d

565 (6th Cir. 2004) (providing false testimony against a prisoner violated substantive due process); *Cale v. Johnson*, 861 F.2d 943 (6th Cir. 1988) (The Court concluded that the plaintiff's allegations-that the defendants maliciously framed him for an offense, thereby subjecting him to a risk of prolonged incarceration resulting from the loss of good-time credits-demonstrated an egregious abuse of governmental power sufficient to support a substantive due process violation.").

The undersigned suggests that, since plaintiff has failed to come forth with sufficient evidence to show that defendant provided knowingly false testimony at the swear-to hearing for the purpose of causing plaintiff to be arrested on less than probable cause, plaintiff has not shown any behavior by defendant that "shocks the conscience." The undersigned further suggests that plaintiff has not offered any evidence that defendant intended to cause him harm, or was arbitrary in any respect. Thus, the undersigned concludes that plaintiff has failed to show any behavior by defendant that "shocks the conscience" and his due process claim must fail.

E.   First Amendment Retaliation

A prisoner retains First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections

system.  *See Pell v. Procunier*, 417 U.S. 817, 822 (1974).  Retaliation based upon

a prisoner's exercise of his or her constitutional rights violates the Constitution.

*See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999).  To establish a First

Amendment retaliation claim, the plaintiff must prove that: (1) the plaintiff

engaged in activities protected by the Constitution or statute; (2) the defendant

took an adverse action that would deter a person of ordinary firmness from

continuing to engage in that conduct; and (3) that this adverse action was taken at

least in part because of the exercise of the protected conduct.  *Id.*  "[I]f a prisoner

violates a legitimate prison regulation, he is not engaged in 'protected conduct,'

and cannot proceed beyond step one."  *Id.* at 395.

Moreover, the plaintiff must be able to prove that the exercise of the

protected right was a substantial or motivating factor in the defendant's alleged

retaliatory conduct.  *See Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429

U.S. 274, 287 (1977).  If the plaintiff is able to make such a showing, the

defendant then has the burden of showing that the same action would have been

taken even absent the plaintiff's protected conduct.  *Id.*; *Thaddeus-X*, 175 F.3d at

399.  Conclusory allegations are insufficient to show that a defendant was

motivated by the exercise of a plaintiff's First Amendment rights.  *Kensu v. Haigh*,

87 F.3d 172, 175 (6th Cir. 1996).  Bare allegations of malice on the part of a

defendant are not enough to establish retaliation claims. *Crawford-El v. Britton, 523 U.S. 574, 588 (1998)*. Moreover, "temporal nexus" is a factor in determining a causal connection in a First Amendment retaliation claim. *Mulazim v. Corrigan, 7 Fed.Appx. 427 (6th Cir. 2001)*.

In this case, where the alleged "protected conduct" (plaintiff's 2003 lawsuit) preceded his arrest by over two years and did not involve Detective Neph, the undersigned suggests that plaintiff cannot establish a First Amendment retaliation claim. Further, plaintiff's entire claim rests on an alleged statement by Detective Neph that he would seek revenge against plaintiff for the earlier lawsuit. These conclusory allegations, unsupported by any corroborating evidence, are insufficient to sustain this claim.

F.  Intentional Infliction of Emotional Distress.

A claim of intentional infliction of emotional distress under Michigan law requires a plaintiff to establish four elements: "(1) extreme and outrageous conduct, (2) intent or recklessness, (3) causation, and (4) severe emotional distress." *Sperle v. Michigan Dep't. of Corrections*, 297 F.3d 483, 496 (6th Cir. 2002), quoting, *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594, 374; N.W.2d 905 (1985) (internal quotation marks omitted). To be considered "extreme and outrageous," the conduct in question must have been "so outrageous in character,

and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Sperle, 297 F.3d at 496*, quoting, *Roberts, 422 Mich at 908-909*.

Like plaintiff's Fourteenth Amendment claim, the undersigned suggests that, because there is no genuine issue of material fact as to whether defendant offered knowingly false testimony, there is no question of fact regarding plaintiff's intentional infliction of emotional distress claim. *See e.g.*, *Chancellor v. City of Detroit, 454 F.Supp.2d 645, 663 (E.D. Mich. 2006)* (Material issues of fact, as to whether police acted outrageously when they allegedly lied about civil rights claimant's possession of firearms and allegedly planted evidence, precluded summary judgment that they had not intentionally inflicted emotional distress, under Michigan law.). Like plaintiff's Fourteenth Amendment claim, the undersigned suggests that plaintiff has not offered any evidence that defendant intended to cause him harm, or was reckless in any respect. Thus, the undersigned concludes that plaintiff has failed to show any behavior by defendant that was "extreme or outrageous" and his emotional distress claim must fail.

G.    <u>Immunity</u>

    1.    Qualified Immunity

Defendant claims to be entitled to qualified immunity regarding his actions in this case. The doctrine of qualified immunity means that "'[g]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Caldwell v. Moore*, 968 F.2d 595, 599 (6th Cir. 1992), quoting, *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Defendant bears the burden of pleading qualified immunity, but plaintiff bears the burden of showing defendant is not entitled to qualified immunity. *Sheets v. Mullins*, 287 F.3d 581, 586 (6th Cir. 2002).

The Supreme Court had established a two-part test in order to determine whether qualified immunity was applicable to a particular situation. *Saucier v. Katz*, 533 U.S. 194 (2001). The first part of the test involved a determination of whether the facts of the case, viewed in the light most favorable to the plaintiff, "show the officer's conduct violated a constitutional right." *Id*. at 201. If the first question was resolved in the affirmative then the court would decide "whether the right was clearly established." *Id*. If both questions are resolved in the

affirmative, then the doctrine of qualified immunity does not apply and the case can proceed.

Very recently, and after the parties had submitted their motions in this case, the Supreme Court revisited its decision in *Saucier* and concluded that the mandatory order of the two-part test for determining if qualified immunity applied was no longer sound based on several factors including judicial economy. *Pearson v. Callahan*, — U.S. —, 129 S.Ct. 808 (2009). While not modifying the factors that should be considered in such a decision, the Court held that sometimes it makes sense to allow the second part of the test to be decided first and that such a decision may resolve the controversy without having to address the first part of the test. In *Pearson*, the § 1983 claim of the plaintiff was based on an allegedly unlawful search conducted by the defendant police officers. Without having to engage in the perhaps more complicated decision of determining whether plaintiff's constitutional rights had been violated, the Court found that the constitutional right claimed by plaintiff was not clearly established where lower court case law was consistent with the conduct of the officers and "principles of qualified immunity [should] shield an officer from personal liability when an officer reasonably believes that his or her conduct complies with the law."

Qualified immunity is immunity from suit rather than a mere defense to liability. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). It is a doctrine that not only shields government officials who have acted properly, but has been crafted by the Supreme Court as an "accommodation for reasonable error." *Hunter v. Bryant, 502 U.S. 224 (1991).* The qualified immunity doctrine protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter*, 502 U.S. at 229. A police officer is entitled to qualified immunity shielding him from a claim for damages for false arrest where (1) it was objectively reasonable for the officer to believe there was probable cause to make the arrest, or (2) reasonably competent police officers could disagree as to whether there was probable cause to arrest. *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991).

The undersigned suggests that defendant is entitled to qualified immunity from plaintiff's constitutional claims for several reasons. First, plaintiff has failed to show that his constitutional rights were violated. Second, plaintiff has failed to show that there was no probable cause to support the arrest warrant. Third, any error committed by Detective Neph surely falls into the category of an objectively reasonable error.

### 2. Governmental Immunity under Michigan law

Defendant argued that plaintiff's state law claims are barred by Michigan's governmental immunity statute, which applies only to lawsuits against state and local governmental entities and their employees. *See Sutherland v. Mizer*, 2008 WL 1995089, *2 n. 2 (E.D. Mich. 2008), citing, Mich. Comp. Laws § 691.1407. To enjoy immunity for intentional torts (which includes malicious prosecution, false arrest/false imprisonment, and intentional infliction of emotional distress), a governmental employee must raise governmental immunity as an affirmative defense and establish that (1) the employee's challenged acts were undertaken during the course of employment and that the employee was acting, or reasonably believed he was acting, within the scope of his authority, (2) the acts were undertaken in good faith, and (3) the acts were discretionary, rather than ministerial, in nature. *Odom v. Wayne County*, 482 Mich. 459; 760 N.W.2d 217 (2008). Thus undersigned suggests that this analysis of state law need not be undertaken, given the recommendations that plaintiff's state law claims fail on their merits. *See e.g. EBI-Detroit, Inc. v. City of Detroit*, 279 Fed.Appx. 340, 350 (6th Cir. 2008).

## V.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the District Court **GRANT** defendant's motion for summary judgment.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 10 days of service, as provided for in 28 U.S.C. § 636(b)(1) and Local Rule 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 10 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity.  The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to

Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that

any objections are without merit, it may rule without awaiting the response.

Date: March 19, 2009                          s/Michael Hluchaniuk
                                              Michael Hluchaniuk
                                              United States Magistrate Judge

## CERTIFICATE OF SERVICE

I certify that on March 19, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: William G. Pierson. I also certify that I have mailed, by United States Postal Service, the foregoing paper to the following non-ECF participant: Daniel Horacek, # 218347, 951 Indianwood Road, Lake Orion, MI 48362.

s/James P. Peltier
Courtroom Deputy Clerk
U.S. District Court
600 Church Street
Flint, MI 48502
(810) 341-7850
pete_peltier@mied.uscourts.gov